**PUPCO PROPERTY MANAGEMENT, d.b.a. R.P. McMurphy's Irish Pub, Appellee,**

v.

**The CITY OF CINCINNATI, Appellant.**

[Cite as *Pupco Property Mgt. v. Cincinnati*, 170 Ohio App.3d 641, 2007-Ohio-1315.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–051007.

Decided March 23, 2007.

Statman Harris & Eyrich, L.L.C., Alan J. Statman, and Brian Giles, for plaintiff–appellee.

Julia L. McNeil, Cincinnati Solicitor, and Richard Ganulin, Senior Assistant City Solicitor, for defendant–appellant.

HILDEBRANDT, Judge.

{¶ 1} Defendant-appellant, the city of Cincinnati, appeals the judgment of the Hamilton County Court of Common Pleas reversing a decision of the city's

Zoning Board of Appeals ("the ZBA") in an administrative appeal filed by plaintiff-appellee, Pupco Property Management, d.b.a. R.P. McMurphy's Irish Pub.

## THE BUILDING PERMIT AND THE ZBA DECISION

{¶ 2} Pupco owns R.P. McMurphy's Irish Pub in the Oakley neighborhood of Cincinnati. In 2005, Pupco sought to expand the business by constructing a deck with an awning, columns, and a service driveway. The application for the permit listed the proposed use for the addition as a "tavern."

{¶ 3} The city's department of buildings and inspections approved Pupco's application. But after residents of the surrounding neighborhood voiced their opposition to the expansion, the ZBA vacated the permit. The ZBA held that the addition was an outdoor eating area that did not comply with the provisions of Cincinnati Municipal Code 1419–21, governing outdoor dining for "limited or full service restaurants."

## THE ADMINISTRATIVE APPEAL: RESTAURANT OR TAVERN?

{¶ 4} Pupco appealed the ZBA's decision to the trial court under R.C. Chapter 2506. During the proceedings before the trial court, Pupco vacillated between arguing that the proposed use for the addition was a restaurant that complied with Cincinnati Municipal Code 1419–21 and asserting that it was a drinking area that was not subject to that provision of the code.

{¶ 5} The city argued that under the terms of the application, the proposed addition was to be used for serving alcoholic beverages. The city further argued that because the addition would be an outdoor addition, it could not be used for the sale and consumption of alcohol on the property, as the property was zoned.

{¶ 6} The trial court overturned the ZBA's decision. The court held that R.P. McMurphy's was a limited-service restaurant and that the proposed expansion complied with Cincinnati Municipal Code 1419–21. The trial court accordingly reinstated the permit that the department of buildings and inspections had issued.

## THE INSTANT APPEAL: INDOOR OR OUTDOOR?

{¶ 7} In a single assignment of error, the city now argues that the trial court erred in reversing the decision of the ZBA.

{¶ 8} Under R.C. 2506.04, the common pleas courts and the courts of appeals apply different standards of review for administrative appeals.

{¶ 9} The common pleas court must determine if the order or decision of the administrative board or agency is "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record."[1] With respect to the assessment of the evidence, only when the record lacks a preponderance of reliable, probative, and substantial evidence to support the agency's decision may the common pleas court reverse, vacate, modify, or remand.[2]

{¶ 10} In contrast, the standard of review for the court of appeals is limited to questions of law and "does not include the same extensive power to weigh 'the preponderance of substantial, reliable and probative evidence,' as is granted to the common pleas court."[3] When assessing the evidence, an appellate court cannot substitute its judgment for that of the common pleas court, except within its limited statutory scope of review, and is to determine only if the common pleas court abused its discretion.[4] The term "abuse of discretion" means more than an error of law or judgment; it means that the trial court's decision was unreasonable, arbitrary, or unconscionable.[5]

{¶ 11} In this case, we hold that the trial court's decision was unreasonable.

{¶ 12} One point of contention before the trial court was whether Pupco intended to use the addition as a restaurant or a bar. Cincinnati Municipal Code 1419–21(d) provides that for an outdoor area to be considered part of a "limited or full service restaurant," "[t]he provision of alcoholic beverages must be secondary and accessory to the provision of food."

{¶ 13} Here, R.P. McMurphy's derived virtually all of its revenue from the sale of alcoholic beverages, and it offered only enough food to maintain its liquor license.

{¶ 14} Although Pupco at various times in the trial court proceedings announced plans to begin serving food at R.P. McMurphy's, those undefined plans did not transform the bar into a restaurant. The application for the addition listed the proposed use as "tavern," and the record did not support a finding that

1. R.C. 2506.04.

2. *Dudukovich v. Lorain Metro. Hous. Auth.* (1979), 58 Ohio St.2d 202, 207, 12 O.O.3d 198, 389 N.E.2d 1113.

3. *Henley v. Youngstown Bd. of Zoning Appeals* (2000), 90 Ohio St.3d 142, 147, 735 N.E.2d 433, quoting *Kisil v. Sandusky* (1984), 12 Ohio St.3d 30, 34, 12 OBR 26, 465 N.E.2d 848, fn. 4. See, also, *Saeed v. Cincinnati*, 1st Dist. No. C–030854, 2004-Ohio-3747, 2004 WL 1585287, at ¶ 21.

4. *Saeed* at ¶ 21, citing *Henley*, 90 Ohio St.3d at 148, 735 N.E.2d 433.

5. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

it would be used as a "limited or full service restaurant" under Cincinnati Municipal Code 1419–21. In light of these inconsistencies, Pupco has apparently abandoned the argument that the addition would be used as a restaurant.

{¶ 15} And Pupco does not dispute that the operation of a tavern in an outdoor area is prohibited on its property. Accordingly, the only issue that remains is whether the proposed addition would be an indoor or outdoor area.

{¶ 16} Our review of the plans and the photographs of the partially completed addition convinces us that it would be an outdoor area. The plans submitted with the permit application reflect that the only covering for the area would be an awning and not a permanent roof. Except for the exterior wall of the main building, the area would be completely without walls, permanent or otherwise, with only fiberglass columns supporting the awning. The only enclosure on three sides of the seating area would be a wrought-iron fence or railing.

{¶ 17} So, except for the awning, the addition would be almost completely open to the elements. It would therefore provide none of the barriers between the drinking area and the surrounding neighborhood that would protect residents from the potential noise and other disturbances that could arise from the operation of a tavern.

{¶ 18} Under any reasonable definition of the term "outdoor," the proposed addition would be an outdoor drinking area that would violate the municipal code. Accordingly, we sustain the assignment of error and hereby enter judgment denying Pupco's application for the permit.

Judgment accordingly.

HENDON, J., concurs.

PAINTER, P.J., concurs separately.

PAINTER, P.J., concurring separately.

{¶ 19} It has become the duty of this august court to decide whether something is indoors or outdoors.

{¶ 20} The city first approved the plans calling the deck indoors, and then took back the approval, calling it outdoors. Then the trial court reversed the takeback, holding that it didn't need doors, because it was a restaurant. Now we reverse the reversal of the reversal, because the place is clearly a bar; and a bar, we learn, can't be outdoors, at least where this one is.

{¶ 21} The city code section defining "Outdoor Eating and/or Drinking Area" would seem the place to look, and the pub here seems to fit this definition: "A porch, patio, deck or other area used for consumption of food and/or beverages by the public which is not completely enclosed within the exterior building walls,

windows and doors of a limited restaurant, full service restaurant or a drinking establishment and which may or may not have a solid roof cover."[6] And everyone concedes that this use is not permitted on the subject property, hence the attempt to make outdoors in.

{¶ 22} So this case is about attempting to avoid this definition by the lawyerly application of language to make one thing into another.

"When *I* use a word," Humpty Dumpty said, in a rather scornful tone, "it means just what I choose it to mean, neither more nor less."

"The question is," said Alice, "whether you *can* make words mean so many different things."

"The question is," said Humpty Dumpty, "which is to be master—that's all."

Alice was too much puzzled to say anything; so after a minute Humpty Dumpty began again. "They've a temper, some of them—particularly verbs: they're the proudest—adjectives you can do anything with, but not verbs— however, *I* can manage the whole lot of them! Impenetrability! That's what *I* say!"

"Would you tell me, please," said Alice, "what that means?"

"Now you talk like a reasonable child," said Humpty Dumpty, looking very much pleased. "I meant by 'impenetrability' that we've had enough of that subject, and it would be just as well if you'd mention what you mean to do next, as I suppose you don't mean to stop here all the rest of your life."

"That's a great deal to make one word mean," Alice said in a thoughtful tone.

"When I make a word do a lot of work like that," said Humpty Dumpty, "I always pay it extra."[7]

{¶ 23} The question is this: Is someone drinking a beer on a deck covered by a roof (the awning) with only one side wall (the building) indoors or outdoors? The simplest resolution might be that, since there is no door at all, it would be impossible to be outdoors. But that would raise the question of whether installing a free-standing door would suffice. I fear not. Surely you have to go *out* a door somewhere to get to this deck—so does that make it outdoors? Maybe the problem is that you don't go *in* a door, so you can't be indoors on the deck.

{¶ 24} But where to draw the line? Surely glass walls would do, if they were on all sides (necessitating a door to go in or out of). But how about half- or

---

6. Cincinnati Municipal Code 1410-01-06.

7. (Emphasis sic.) Lewis Carroll, *Through the Looking Glass,* Easton Ed., 112.

three-quarter-walls. What if they open? Windows open, but just looking out a window doesn't make you outdoors.

{¶ 25} The Merriam–Webster Online Dictionary defines "indoor" as "1: of or relating to the interior of a building. 2: living, located, or carried on within a building." [8] That definition talks about buildings, so we jump there and find "a usually roofed and walled structure built for permanent use (as for a dwelling)." [9] So we could glean that the word "indoors" implies being in a building, and a building (usually) has walls and a roof.

{¶ 26} The structure in question here arguably has a roof. A "roof" is "the cover of a building." [10] (I think a canvas roof is OK—though is someone who is in a tent indoors? They are surely not outdoors, whether or not the tent has a door.) But the deck doesn't have "walls"—it just has one. So under the definition of "indoor," it seems not to qualify.

{¶ 27} But "outdoor" is "1: of or relating to the outdoors. 2 a: performed outdoors <*outdoor* sports>, b: outdoorsy <an *outdoor* couple>. 3: not enclosed: having no roof <an *outdoor* restaurant>." [11] So if not having a roof is the key, then the deck could be said to be indoors. But it's not the only key.

{¶ 28} The city code actually does define "building" (but not "indoors" or "outdoors"). It reads: " 'Building' means a structure enclosed within exterior walls, built, erected and framed of a combination of materials, having a roof to form a structure for the shelter of persons, animals, or property of any kind and excluding any structure designed as a house-trailer or other type trailer." [12] So it must have a roof and exterior walls and be "of a combination of materials." Why a combination? So an igloo would not be a building, if it were only of ice. And what is the difference between "built," "erected," and "framed"?

{¶ 29} But a roof and exterior walls make a building and there must be more than one wall. Just a roof does not make outdoors in. So I concur that the deck is "outdoors," at least in its present state.

---

8. Http://209.161.33.50/dictionary/indoor.

9. Http://209.161.33.50/dictionary/building.

10. Http://209.161.33.50/dictionary/roof.

11. Http://209.161.33.50/dictionary/outdoor.

12. Cincinnati Municipal Code 1401–01–B9.